# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| RODNEY HARRIS and DEREK BASS, individually and on behalf of all other persons similarly situated,<br>　　　　Plaintiffs,<br><br>　　　v.<br><br>HEALTHCARE SERVICES GROUP, INC.,<br>　　　　Defendant. | CIVIL ACTION<br><br>NO. 06-2903 |

## Memorandum and Order

YOHN, J.                                                                                                           July ____, 2008

      Defendant Healthcare Services Group, Inc. ("Healthcare") has filed a motion for summary judgment, asserting that plaintiffs Derek Bass, Rodney Harris, Ryan Lesane, and Barbara Rogers lack evidence to support their nonpayment of overtime claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Cons. Stat. § 260.1 *et seq.* For the following reasons, I will grant Healthcare's motion.

## I.     Factual and Procedural Background

      Healthcare provides housekeeping and laundry services to health care institutions on a contract basis, pursuant to service agreements. (Def.'s Ex. A, McCartney Decl. ¶ 2.) Generally, Healthcare provides an on-site manager and housekeepers, floor techs, and laundry workers. (*Id.* ¶ 3.) Account managers report to district managers. (*Id.* ¶ 4.) Account managers schedule employees and track the hours worked by employees, reporting the hours worked to the district

manager. (*Id.* ¶¶ 6-7.)

Healthcare had a service agreement with Dresher Hill Health and Rehabilitation Center for the provision of housekeeping and laundry services. (*Id.* ¶ 13.) Plaintiffs were employed by Healthcare at Dresher Hill at various times from July 2004 through March 2006. (*Id.* ¶¶ 20-22.) During this period, Healthcare's account managers at Dresher Hilll (and thus plaintiffs' supervisors) were Thomas Gainer (from July 2004 through March 4, 2005), Glen Kersey (from January 22, 2005 through April 30, 2005), Rick Ellerbe (from May 14, 2005 through November 14, 2005), Donte Wilkerson (from December 10, 2005 through December 24, 2005), and William Bailey (from February 2006 through March 30, 2006). (*Id.* ¶ 23.)

At Dresher Hill, Healthcare's employees punched time cards into a time clock to record the hours they worked each day. (*Id.* ¶ 19.) Each time card represented a two-week pay period. (*Id.*) Paychecks for each pay period are normally distributed on the Thursday or Friday after the last day of the pay period. (*Id.* ¶ 10.) However, time sheets are faxed to the payroll office on the Thursday prior to the end of each pay period. (*Id.* ¶ 11.) For this reason, estimated hours worked for the last Thursday, Friday, and Saturday of each period are projected and corrections are made, if necessary, in the next pay period. (*Id.* ¶ 11-12.) Thus, a paycheck received for a pay period might be inconsistent with the number of hours actually worked during that pay period.

Healthcare and plaintiffs both produced time cards for the relevant time period; however, several time cards are missing. Bass's time cards are missing for the pay periods ending August 7, 2004; January 22, 2005; February 5, 2005; and March 18, 2006. Harris's time cards are missing for the work week ending October 30, 2004 and the pay period ending March 19, 2005.

Healthcare employees at Dresher Hill were covered by a collective bargaining agreement,

which required that employees be paid for overtime worked at the rate of one and one-half times their regular hourly rate for hours worked in excess of eight in one day or eighty in one two-week pay period. (*Id.* ¶¶ 15, 17.) However, under the FLSA, Healthcare was obligated to pay its employees overtime for all hours worked in excess of forty in one week (rather than eighty in two weeks). *See* 29 U.S.C. § 207(a), (j). Healthcare understood its obligation to pay its employees at the overtime rate for all hours worked in excess of eight in one day or forty in one week. (Def.'s Ex. A, McCartney Decl. ¶ 18.)

Susan Outlaw, a Dresher Hill employee, was plaintiffs' union delegate. (Pls.'s Ex. G, Outlaw Dep. 7:17-20, 8:23-9:3, Dec. 21, 2007.) As a union delegate, her responsibilities included representing the employees at Dresher Hill (including Healthcare's employees) and ensuring that the collective bargaining agreement was honored. (*Id.* at 9:6-23.) The collective bargaining agreement provided a grievance procedure for the resolution of disputes regarding the implementation of the collective bargaining agreement. (Def.'s Ex. A, McCartney Decl. ¶ 24.) As part of the procedure, grievances had to be reduced to writing and submitted to Healthcare. (*Id.*) The grievance procedure culminated in binding arbitration. (*Id.*) Healthcare was aware of only one grievance relating to failure to pay overtime, which was filed on March 7, 2005 and was resolved without arbitration. (*Id.* ¶ 25.) Two grievances relating to overtime are in the record as exhibits to Outlaw's deposition testimony; these were submitted on March 7, 2005 and October 4, 2005, and involve overtime. (Pls.'s Ex. H.)

Rodney Harris and Derek Bass filed the Complaint on July 3, 2006, on behalf of themselves and all others similarly situated, seeking to recover allegedly unpaid overtime compensation. In Count I, they allege violation of the FLSA; and in Count II, they allege

violation of the WPCL. Lesane and Rogers, opt-in plaintiffs, filed consents to join the lawsuit on October 7, 2007. Healthcare filed its motion for summary judgment on January 31, 2008.

## II.     Standard of Review

A motion for summary judgment will be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, the nonmoving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986) (quoting Fed. R. Civ. P. 56(e)). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Lebatt, Ltd.* 90 F.3d 737, 743 (3d Cir. 1996) (quoting *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995)). The nonmovant must present concrete evidence supporting each essential element of his claim. *Celotex*, 477 U.S. at 322-23.

When a court evaluates a motion for summary judgment, "[t]he evidence of the non-movant is to be believed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Furthermore, "all justifiable inferences are to be drawn in [the nonmovant's] favor." *Id.* "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Ideal Dairy Farms*, 90 F.3d

at 744 (quoting *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3d Cir. 1991)).  However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment."  *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).  The nonmovant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which he bears the burden of production.  *Anderson*, 477 U.S. at 252.  Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587.

### III. Discussion

#### A. Fair Labor Standards Act

Under the FLSA, an employer must pay employees who work more than forty hours in one week at a rate of one and one-half times their regular rate of pay.  29 U.S.C. § 207(a)(1).  An employee who seeks unpaid overtime may sue under the FLSA, and the employee has the burden of proving that he performed work for which he was not properly compensated.  29 U.S.C. § 216(b); *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946).  "[W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes" for those records, "an employee has carried out his burden [at trial] if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Anderson*, 328 U.S. at 687.  Under this scenario, the burden of proof then shifts to the employer, who in order to prevail must "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."  *Id.* at 687-88.  Because a few of plaintiffs' time cards are

5

missing, plaintiffs cannot "easily discharge [their] burden," *id.* at 686, and so I will apply the burden-shifting framework.

Rogers cannot prove that she in fact performed work for which she was improperly compensated. Rogers did not respond to Healthcare's written discovery, and she did not attend her noticed deposition. The hours she worked and her pay for those hours—including overtime pay—are before the court in the form of Healthcare's "Statement of Wages." (*See* Pls.' Ex. J.) This record reflects that Rogers was paid one and one-half times her regular rate of pay for the 15.5 hours of overtime she worked. No evidence in the record suggests she worked additional overtime for which she was not paid. Therefore, no reasonable fact finder could find that she in fact performed work for which she was improperly compensated. Accordingly, Healthcare's motion for summary judgment will be granted as to Rogers.

Lesane also cannot prove that he performed work for which he was not properly compensated. His only evidence is that he was paid later than he would have liked; he has no evidence that he was not fully paid. In his deposition, Lesane testified as follows:

> Q. But just to make sure that I understand, you—you didn't get paid when you thought you should get paid. You didn't get paid in the paycheck that was supposed to cover that two-week period as much as you had worked, but you got paid in the next paycheck for work that you performed during the next two-week period, as well as additional pay for work that you had worked in the prior two weeks; is that correct?
> A. Yes, I understand.
> Q. Okay. Well, but am I correct?
> A. Yes, you are.
> Q. Okay.
> Now, so would it be fair to say that your complaint was that you were getting paid late, but not that you weren't getting paid for the time that you actually worked?
> A. Yes, that's my complaint.

(Def.'s Ex. D, Lesane Dep. 62:19-63:16, Dec. 17, 2007.)  While being questioned by his own attorney, Lesane reiterated that he had been paid for overtime worked:

> Q. Were you ever paid for the overtime you worked?
> A. Yes, I did. Eventually, I did get paid for it. I got paid for my time that I worked. It would be on the next check. I would receive it two weeks later.

(*Id.* at 81:4-10.)  Thus, Lesane's own testimony refutes any argument that he was not paid for overtime worked, and no reasonable fact finder could find that he in fact performed work for which he was improperly compensated.[1]  Accordingly, Healthcare's motion for summary judgment will be granted as to Lesane.

Healthcare's motion for summary judgment will also be granted as to Bass and Harris, for although a genuine issue of material fact exists as to whether they were not paid for overtime worked, they have presented no evidence from which a reasonable jury could estimate the amount and extent of their allegedly unpaid overtime work.

A genuine issue of material fact exists as to whether Bass and Harris were not paid for overtime worked because they have come forward with some evidence that they in fact performed work for which they were improperly compensated.  Bass and Harris argue that their deposition testimony; the deposition testimony of Outlaw, their union delegate; and the deposition testimony of Gainer, a former manager, "corroborate[] [p]laintiffs' claims that overtime work was being performed and overtime work was not being paid."  (Pls.' Resp. 15.)

Bass and Harris's claims are supported by the record in part.  Harris testified in an earlier deposition (the transcript of which was read during his later deposition) that he complained to the

---

[1] Lesane's claim that he was paid late was not made in plaintiffs' Complaint and so is not before the court.  In any event, late payment of overtime does not necessarily violate the FLSA or WPCL.  *See* 43 Pa. Cons. Stat. § 260.3(a); 29 C.F.R. § 778.106.

union delegate, Outlaw, almost every day about "[o]vertime, not being paid overtime, not being paid all the hours that I worked, the wrong wages." (Def.'s Ex. C, Harris Dep. 75:12-76:2, Dec. 5, 2007.) Bass testified that he did not receive overtime pay for overtime worked when Kersey was the manager. (Def.'s Ex. B, Bass Dep. 62:23-63:4, Dec. 4, 2007.) Outlaw testified that she saw Bass and Harris working overtime and that they complained to her[2] about not being paid for overtime work.[3] (Pls.'s Ex. G, Outlaw Dep. 46:24-47:3, 90:11-19.)

Gainer's testimony, however, does not buttress Bass and Harris's claim. In fact, Gainer's testimony, on which Bass and Harris rely, actually supports the proposition that Bass and Harris had been paid for the overtime they worked:

> Q. To your knowledge, was Rodney Harris or Derek Bass ever paid overtime?
> A. They were paid up, to my knowledge, but not the overtime that was in that payroll that they had worked the overtime.

(Pls.' Ex. B, Gainer Dep. 30:18-22, Nov. 19, 2007.)[4] In sum, Gainer's testimony and the testimony of Bass, Harris, and Outlaw create a genuine issue of material fact as to whether Bass

---

[2] Hearsay in deposition testimony may be sufficient evidence to survive a motion for summary judgment when the nonmovant can produce the declarant to testify at trial and the declarant's testimony would be admissible at trial. *See Clark v. Pennsylvania*, 885 F. Supp. 694, 709 n. 3 (E.D. Pa. 1995) (citing *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1235 n.9 (3d Cir. 1993)).

[3] Healthcare has suggested that Outlaw's testimony is not credible. (*See* Def.'s Reply 17.) That issue, however, is for cross-examination at trial. *See Anderson*, 477 U.S. at 255 (holding that credibility determinations are to be made by the jury).

[4] This testimony does not, however, appear to be highly probative, for Bass testified that he "didn't really have an issue" with Gainer. (Def.'s Ex. B, Bass Dep. 12:8-12.) Instead, he "had an issue with Glenn Kersey and Rick Ellerbe." (*Id.* at 12:13-15.) And he testified that "[w]hen Glenn Kersey came into the building" was "the only time we didn't receive overtime or time-and-a-half or anything." (*Id.* at 62:23-63:3.)

and Harris in fact performed work for which they were improperly compensated.

Nevertheless, I will grant Healthcare's motion for summary judgment because no reasonable jury could conclude on the basis of the record before me that sufficient evidence exists "to show the amount and extent of that work as a matter of just and reasonable inference," *Anderson*, 328 U.S. at 687.  Neither Bass nor Harris provided an estimate of the hours of overtime allegedly worked for which he was unpaid.  In Healthcare's first set of interrogatories directed to Bass and Harris, Healthcare requested "[t]he amount of damages you contend you are entitled to" and "the method by which such damages were calculated."  (Def.'s Facts ¶ 31; Pls.' Facts ¶ 31.)  Bass and Harris each responded:  "Answering plaintiff seeks reimbursement for overtime payment and any and all other damages and money allowed by law."  (Def.'s Facts ¶ 33; Pls.' Facts ¶ 33.)

In their response to Healthcare's motion, Bass and Harris do not provide an estimate of unpaid overtime, but state only that others saw them working overtime.  They assert that "Gainer saw Bass and Harris work overtime during a project in November 2005.  They were not paid." (Pls.' Resp. 16 (internal citation omitted) (citing Pls.' Ex. B, Gainer Dep. 30:18-22).)  However, as explained above, Gainer's testimony actually explains that Bass and Harris were paid for overtime worked.  Moreover, neither Bass nor Harris had a problem with unpaid overtime during the time Gainer was their account manager.  (Def.'s Ex. B, Bass Dep. 12:5-12; Def.'s Ex. C, Harris Dep. 104:19-105:8, 106:12-17.)   Bass and Harris also assert in their response that "Susan Outlaw estimated Bass and Harris worked approximately thirty . . . hours of pay in overtime in December 2004 and January 2005."  (Pls.' Resp. 16 (citing Pls.' Ex. G, Outlaw Dep. 46:23-47:03).)  However, there is no evidence from which to determine the number of hours of *unpaid*

overtime worked, if any. Additionally, Gainer was an account manager throughout this time, and as noted above, Bass and Harris testified that they had no problems with him. Finally, most of the missing time cards are from periods during which Gainer and Bailey were the account managers, and Bass and Harris had no problem with these managers. (Def.'s Ex. B, Bass Dep. 12:5-12, 16-18; Def.'s Ex. C, Harris Dep. 104:19-105:8, 106:12-17.) Thus, there is no evidence from which a reasonable jury could determine the amount and extent of plaintiffs' allegedly unpaid overtime work as a matter of just and reasonable inference. Therefore, I will grant Healthcare's motion for summary judgment as to the FLSA claim brought by Harris and Bass.

      **B.**      **Pennsylvania Wage Payment and Collection Law**

Pursuant to the WPCL, 43 Pa. Cons. Stat. § 260.3(a),[5] an employer must pay all wages—including overtime wages—owed to its employees. If the employer fails to pay wages earned by employees, the employees have the right to enforce payment by bringing a claim to recover unpaid wages and liquidated damages. 43 Pa. Cons. Stat. § 260.9a(b).[6] However, the "WPCL does not create a right to compensation. Rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the

---

[5] The relevant provision provides: "Every employer shall pay all wages, other than fringe benefits and wage supplements, due to his employe[e]s on regular paydays designated in advance by the employer. Overtime wages may be considered as wages earned and payable in the next succeeding pay period." *Id.*

[6] This provision states, in relevant part:
    Actions by an employe[e], labor organization, or party to whom any type of wages is payable to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction, by such labor organization, party to whom any type of wages is payable or any one or more employe[e]s for and in behalf of himself or themselves and other employe[e]s similarly situated . . . .
*Id.*

parties governs in determining whether specific wages are earned." *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990). When the employer's "contractual obligation to pay earned wages," *id.*, is contained in a collective bargaining agreement, the WPCL "is preempted by the Labor Management Relations Act and the National Labor Relations Act," *Antol v. Esposto*, 100 F.3d 1111, 1121 (3d Cir. 1996). To state a claim under the WPCL, then, a plaintiff's complaint must be based on a contractual agreement with the employer other than a collective bargaining agreement.

The only contractual agreement between plaintiffs and Healthcare before the court is the collective bargaining agreement. (Plaintiffs have pointed to no other contract governing the employment relationship.) Therefore, plaintiffs' WPCL claim is preempted.[7] *See Andrako v. United States Steel Corp.*, No. 07-1629, 2008 WL 2020176, at *8 (W.D. Pa. May 8, 2008). I will grant Healthcare's motion for summary judgment as to this claim.

---

[7] I agree with another district court that "even though [plaintiffs'] WPCL claim may not *turn on* an interpretation of a disputed provision of the [collective bargaining agreement], it is squarely *based on* the [collective bargaining agreement] and, therefore, is preempted." *See Andrako* 2008 WL 2020176, at *8 (emphasis added). If plaintiffs' claim is not based on the collective bargaining agreement, "it fails because, as set forth above, the WPCL does not create an independent substantive right to wages." *Id.*

11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RODNEY HARRIS and DEREK BASS, individually and on behalf of all other persons similarly situated,<br>  Plaintiffs,<br><br>  v.<br><br>HEALTHCARE SERVICES GROUP, INC.,<br>  Defendant. | :<br>:<br>:<br>:  CIVIL ACTION<br>:<br>:  NO. 06-2903<br>:<br>:<br>:<br>:<br>: |

## Order

    **AND NOW**, this _____ day of July 2008, upon consideration of the summary judgment motion of defendant Healthcare Services Group, Inc. (Docket No. 51), plaintiffs' response thereto, and defendant's reply **IT IS HEREBY ORDERED** that defendant's motion for summary judgment is **GRANTED**. Judgment is entered in favor of defendant Healthcare Services Group, Inc. and against plaintiffs Derek Bass, Rodney Harris, Ryan Lesane, and Barbara Rogers.

    **IT IS FURTHER ORDERED** that a status conference is scheduled for July 30, 2008 at 11:30 a.m. in chambers.

                                                                _____s/ William H. Yohn Jr._____
                                                                   William H. Yohn Jr., Judge